UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE EDWARD PEYTON,<br><br>    Plaintiff,<br><br>    v.<br><br>RANDY GROUNDS,<br><br>    Defendant. | Case No. 13-cv-04232-VC<br><br>**ORDER OF PARTIAL SERVICE OF AMENDED COMPLAINT**<br><br>Re: Dkt. No. 18 |

Lee Edward Peyton, an inmate at Kern Valley State Prison proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 asserting an Eighth Amendment claim for deliberate indifference to his safety against Randy Grounds, Warden at Salinas Valley State Prison, where Peyton was formerly incarcerated. On May 8, 2014, the Court issued an order dismissing the Eighth Amendment claim for damages with leave to amend. Peyton filed a second amended complaint ("SAC") on July 14, 2014, which the Court now reviews.

## DISCUSSION

**I.    Standard of Review**

    **A. Claim Under Section 1983**

A federal court must screen any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, to dismiss any claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or fails to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

But there is no respondeat superior liability under Section 1983. *Lemire*, 726 F.3d at 1074. That is, a supervisor is not liable merely because the supervisor is responsible, in general terms, for the actions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984). A supervisor may be liable only on a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). It is insufficient for a plaintiff to allege generally that supervisors knew about the constitutional violation or that they generally created policies and procedures that led to the violation, without alleging "a specific policy" or "a specific event" instigated by the supervisors that led to the constitutional violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

**B. Eighth Amendment Claim for Deliberate Indifference to Safety**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This includes prison officials' duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). However, the failure of prison officials to protect inmates from attacks by other inmates or from dangerous

conditions at a prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety.  *Farmer*, 511 U.S. at 834; *Hearns*, 413 F.3d at 1040-41.

## II.     Allegations in the Previous Complaint

In his previous complaint, Peyton alleged the following:

At the prison, "racial-inmate prison politics" dictate inmates' behavior such that, if Peyton violated any of the "racial-inmate politics" rules, he would be beaten or stabbed by inmates of his own African-American race or by inmates of the "offended" races.  For instance, Peyton could play basketball on only one of two basketball courts, he could use only one of two sets of pull-up bars, and he could use only one of two punching bags.  The seven picnic tables in the recreation yard of Facility B are racially segregated as a result of racial-inmate political designations.  Racial politics dictate the behavior of inmates in many other instances and inmates will be beaten or otherwise injured if they disregard the "racial political rules."

Grounds, as Warden of the prison, was aware of the intricacies of inmate racial prison politics and knew that inmate violence results when an inmate does not follow the racial political rules.  Despite Grounds' knowledge that inmates are exposed to a substantial risk of assault because of these rules, he has not taken any action to abate the risk of harm to inmate health and safety.  Instead, Grounds has encouraged, promoted and condoned an atmosphere that allows inmates to control other inmates by prison politics that entails frequent violence.

While he was at the prison, Peyton was not harmed, but he was in imminent danger from the inmate racial politics and Grounds' policy of giving inmates freedom to enforce the racial rules upon each other.

In its order, the court granted Peyton leave to amend the Eighth Amendment claim so that he could "allege how Grounds had specific knowledge of the inmate racial policy and . . . the specific policy or events Grounds implemented that encouraged, promoted and condoned the inmate racial policy."

**II.     Allegations in the SAC**

In his SAC, Peyton adds the following allegations:

Grounds has many years of experience working in the California Department of Corrections and Rehabilitation and has received professional training in gang culture. Therefore, he knows how gangs direct and control the behavior of their own gang members and the members of other gangs, and he knows that this behavior breeds and incites racial hostility and violence. Peyton was incarcerated at the prison from July 11, 2013 to January 24, 2014, during which time Grounds failed to take any action to stop the racial segregation employed by other gangs against him as an African American. As a result of the inmate segregation with its potential for violence and Grounds' failure to take steps to alleviate it, Peyton suffered psychological and emotional distress as evidenced by the increased side effects of his Tourette's syndrome.

Peyton alleges that, through discovery, he will obtain evidence of other grievances, lawsuits and newspaper stories about the racial violence at the prison which will establish that Grounds knew about the substantial risk to inmate health and safety due to the inmate racial segregation, and yet he failed to take any action to remedy these unsafe conditions.

Liberally construed, the pleadings appear to state an Eighth Amendment claim against Grounds for failing to take steps to stop inmates from enforcing self-created racial segregation within the prison, which created a substantial risk to Peyton's health and safety.

For the first time in this SAC, Peyton also asserts that Grounds' behavior constitutes an Equal Protection violation. A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent by a state actor. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state an Equal Protection claim, the plaintiff must allege that the defendant acted at least in part because of the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003).

Liberally construed, the allegations in the SAC that Grounds knew about the inmates' rules requiring racial segregation and did nothing to stop it states an Equal Protection claim.

4

**CONCLUSION**

Based on the foregoing, the Court orders as follows:

1. Peyton states a cognizable Eighth Amendment claim for deliberate indifference to his safety and a cognizable Equal Protection claim against Grounds.

2. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint (docket no. 1) and all attachments thereto and a copy of this Order to Warden Randy Grounds at SVSP. The Clerk shall also mail a courtesy copy of the complaint with all attachments and a copy of this Order to the California Attorney General's Office and a copy of this Order to Plaintiff.

3. Defendant is cautioned that Rule 4 of the Federal Rules of Civil Procedure require him to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendant, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fails to do so, he will be required to bear the cost of such service unless good cause be shown for his failure to sign and return the waiver forms. If service is waived, this action will proceed as if Defendant had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendant will not be required to serve and file an answer before sixty days from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.)

Defendant is advised to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendant has been personally served, the answer shall be due sixty days from the date on which the request for waiver was sent or twenty days from the date the waiver form is filed, whichever is later.

4. The following briefing schedule shall govern dispositive motions in this action:

    a. No later than thirty days from the date his answer is due, Defendant shall file a motion for summary judgment or other dispositive motion. If Defendant files a motion for summary judgment, it shall be supported by adequate factual documentation and shall conform in

all respects to Federal Rule of Civil Procedure 56. If Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

At the time of filing the motion for summary judgment or other dispositive motion, Defendant shall comply with the Ninth Circuit's decision in *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012), and provide Plaintiff with notice of what is required of him to oppose a summary judgment motion.

    b. Plaintiff's opposition to the motion for summary judgment or other dispositive motion shall be filed with the Court and served on Defendant no later than twenty-eight days after the date on which Defendant's motion is filed.

Before filing his opposition, Plaintiff is advised to read the notice that will be provided to him by Defendant when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's summary judgment motion. Such evidence may include sworn declarations from himself and other witnesses, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

    c. Defendant shall file a reply brief no later than fourteen days after the date Plaintiff's opposition is filed.

    d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

5. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendant to depose Plaintiff and any other necessary witnesses confined in prison.

6. All communications by Plaintiff with the Court must be served on Defendant, or Defendant's counsel once counsel has been designated, by mailing a true copy of the document to Defendant or counsel.

7. It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

8. Extensions of time are not favored, though reasonable extensions will be granted.  Any motion for an extension of time must be filed no later than ten days prior to the deadline sought to be extended.

**IT IS SO ORDERED.**

Dated: September 5, 2014

_____
VINCE CHHABRIA
United States District Judge